# EXHIBIT B – POLICY

## CERTIFICATE OF AUTHENTICITY

**I, Deneen Rogers, a member of the Underwriting Department for Midvale Indemnity Company, hereby certify that this policy of insurance is a true and correct copy of our policy # CP00085150, issued by Midvale Indemnity Company to:**

**TENESSEE WHOLESALE NURSERY LLC**
**12845 TN-108**
**ALTAMONT TN 37301**

EFFECTIVE:

**12:01 AM 9/10/2025 through**
**12:01 AM 9/10/2026 (local time)**

**Signed, this 5TH day of February 2026.**

Deneen Rogers
Manager, Insurance Operations

**Notary:**

The State of MO

date 2/5/26

Then personally appeared the above-named Deneen Rogers and acknowledged the foregoing to be his free act and deed, before me,

, Notary Public

Chrissy M. Lewandowski
Notary Public - Notary Seal
Buchanan County - State of Missouri
Commission Number 13318619
My Comission Expires 3/8/2017

PO Box 5316
Binghamton,NY13902

**Progressive Advantage Business Program**
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company
Tel: (844) 306-4926

Tennessee Wholesale Nursery LLC
12845 TN-108
Altamont,TN 37301

**Policy Number:** CP00085150
**Date:** 06/23/2025

Dear Tennessee Wholesale Nursery LLC,

Progressive Advantage Business Program is pleased to be of service to you. Our objective is to provide you with comprehensive and professional products for all of your insurance needs.

Please find the enclosed policy documents.

If you have any questions, please contact your agent or our Service Center at (844) 306-4926

Sincerely,

Customer Care Department

Policies are underwritten and issued by member companies and affiliates of Homesite Group Incorporated. Policies are underwritten by Midvale Indemnity Company (California Certificate of Authority Number 2224-4)

Progressive Advantage Business Program
**Underwritten by:** Midvale Indemnity Company
A Wisconsin Stock Company

**Send policy correspondence to:**
PO Box 5316
Binghamton,NY 13902
(844) 306-4926

Information as of: 09/10/2025

# POLICY DECLARATIONS

This document and your policy contract define our insuring agreement. In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

| | | | |
|---|---|---|---|
| **Named Insured:** | Tennessee Wholesale Nursery LLC | **Policy Number:** | CP00085150 |
| **E-mail Address:** | sales@tennesseewholesalenursery.com | **Policy Type:** | Commercial General Liability |
| **Phone:** | 9313046844 | **Policy Period:** | 09/10/2025 to 09/10/2026 12:01AM Standard Time at Primary Location |

## Location Information

### Location #1 (Primary location)

**Address:** 12845 TN-108
Altamont, TN 37301

## Policy Level Coverage (limits & deductibles shown are non-stackable across locations)

### General Liability

| | **Limit** |
|---|---|
| Per Occurrence Limit | $1,000,000 |
| General Aggregate Limit (other than products/completed operations) | $2,000,000 |
| Products/Completed Operations Aggregate limit | $2,000,000 |
| Personal and Advertising Injury limit | $1,000,000 |
| Damage to Premises Rented to You (limit per premises) | $100,000 |
| Medical Payments (limit per person) | $5,000 |

| | **Deductible** |
|---|---|
| Liability Property Damage Deductible | $500 |

## Other Liability Coverage

| | Limit | Deductible |
|---|---|---|
| Employee Benefits Liability | $1,000,000 | $1,000 |
| Cyber Suite Without Business Income | $25,000 / $50,000 | $1,000 |

| General Liability Premium | $1,831 |
|---|---|

# Classification Information

| Location | Class Code | Class Description | Exposure Basis | Exposure Amount |
|---|---|---|---|---|
| **1** | 18437 | Stores - no food or drink - Other than Not-For-Profit | Gross Sales | $998,000 |

| **Policy Premium** | **$1,838** |
|---|---|

### Premium Taxes, Surcharges and Fees (note: included in Policy Premium above)

| | |
|---|---|
| Cyber Claim Support and Risk Management Fee | $7.00 |

### Discounts Applied to This Policy

Loss-Free
Loyalty

### Policy Forms and Endorsements

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 04 35 12 07 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| CG 21 01 11 85 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 50 04 13 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 70 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 74 10 03 21 | ADDITIONAL INSURED -BLANKET |
| CG 77 48 03 21 | PUNITIVE DAMAGES EXCLUSION |
| CYB 00 01 05 22 | CYBER COVERAGE INSURANCE |
| IL 00 21 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 02 50 09 08 | TENNESSEE CHANGES - CANCELLATION AND NONRENEWAL |
| IL 09 85 01 15 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| IL N 098 09 03 | TENNESSEE FRAUD STATEMENT |

In witness whereof, we have caused this policy to be signed by our authorized officers.

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI 53783**

**Tony Desantis , Jr.**
**President**

**Lauren K. Powell**
**Secretary**

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 06/23/2025

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.**

**IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).**

| PRODUCER | |
|---|---|
| Progressive Advantage Business Program<br>PO Box 5316<br>Binghamton NY 13902 | CONTACT NAME: Progressive Advantage Business Program<br>PHONE (A/C, No, Ext): (844) 306-4926 FAX (A/C, No):<br>E-MAIL ADDRESS: commercialservice@homesite.com |

| INSURED | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| Tennessee Wholesale Nursery LLC<br>12845 TN-108<br>Altamont TN 37301 | INSURER A : Midvale Indemnity Company | 27138 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

COVERAGES CERTIFICATE NUMBER: 00004159225980 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | N | N | CP00085150 | 09/10/2025 | 09/10/2026 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE [ ] OCCUR [X] | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | [X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY(Per accident) | |
| | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED / RETENTION $ | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECU-TIVE OFFICER/MEMBER EXCLUDED? [ ]<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |
| | PROFESSIONAL LIABILITY | | | | | | OCCURRENCE<br>AGGREGATE | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Farm and Garden Supply Store

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TENNESSEE WHOLESALE NURSERY LLC<br><br>12845 TN-108<br>ALTAMONT TN 37301 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>[signature] |

© 1988-2015 ACORD CORPORATION. All rights reserved.



The ACORD name and logo are registered marks of ACORD

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 10 of 71 PageID #: 43

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

 © ISO Properties, Inc., 2007 

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 24 of 71 PageID #: 57

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

**a.** We have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 25 of 71 PageID #: 58

# TENNESSEE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.


© ISO Properties, Inc., 2003

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 26 of 71
PageID #: 59

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible PER CLAIM | or | PER OCCURRENCE |
|---|---|---|---|
| Bodily Injury Liability | $ | | $ 0 |
| OR | | | |
| Property Damage Liability | $ | | $ 500 |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.


Copyright, Insurance Services Office, Inc., 1994

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 27 of 71
PageID #: 60

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994 

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 28 of 71
PageID #: 61

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $ 1,000,000 | **each employee** | $ 1,000 | $ 160 |
| | $ 2,000,000 | **aggregate** | | |
| **Retroactive Date:** | 09/10/2024 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 30 of 71
PageID #: 63

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 33 of 71 PageID #: 66

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   **5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   **18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Description of Operations:**
All operations associated with Tennessee Wholesale Nursery LLC

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 35 of 71 PageID #: 68

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013 

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 36 of 71 PageID #: 69

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.


© ISO Properties, Inc., 2006

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license;

**(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

 © Insurance Services Office, Inc., 2012 
Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 38 of 71 PageID #: 71

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.


© Insurance Services Office, Inc., 2015

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - BLANKET

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. Additional Insureds**

Each of the following is added to **Section II – Who is An Insured,** but only as specifically described by the following**:**

**1.** Any person or organization for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be included as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" caused in whole or part, by:

**a.** Your acts or omissions; or

**b.** The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard for the additional insured at the location designated and described in the written contract or agreement.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

**2.** Any state or political subdivision, subject to the following additional provisions:

**a.** This insurance applies only with respect to the following hazards for which a state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

**(1)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistway openings, sidewalk vaults, street banners, or decorations and similar exposure;

**(2)** The construction, erection or removal of elevators; or

**(3)** The ownership, maintenance or use of any elevators covered by this insurance**.**

**b.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit. This insurance does not apply to:

**(1)** Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality;

**(2)** "Bodily injury" or "property damage" included within the products- completed operations hazard; or

**3.** Any person(s) or organization(s) with a controlling interest in you but only with respect to their liability arising out of;

**a.** Their financial control of you; or

**b.** Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for such additional insured.

4. Any manager or lessor of premises to whom you are obligated by virtue of a written “Insured Contract” to provide insurance such as afforded by this policy, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you. This insurance does not apply to:
   a. Any “occurrence” which takes place after you cease to be a tenant in thatpremises; or
   b. Structural alterations, new construction or demolition operations performed by orfor such additional insured.
5. Any person or organization as mortgagee, assignee or receiver but only with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you.

   This insurance does not apply:
   a. Any “occurrence” that takes place after you cease to be a tenant in thatpremises; or
   b. Structural alterations, new construction or demolition operations performed by orfor such additional insured.
6. Any person or organization arising out of the ownership, maintenance or use of that part of the land leased to you and subject to the following additional exclusions.

   This insurance does not apply to:
   a. Any “occurrence” which takes place after you cease to lease that land; or
   b. Structural alterations, new construction or demolition operations performed by oron behalf of such additional insured.
7. A co-owner of a premises and covered under this insurance but only with respect to liability as co-owner of such premises.
8. Any person(s) or organization(s) who is the lessor of leased equipment to you and required by the lease to be included as an additional insured but only with respect to liability for “bodily injury”, “property damage” or “personal and advertising injury” caused in whole or in part by your maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s).

   With respect to the insurance afforded these additional insureds, this insurance does not apply to any “occurrence” which takes place after the equipment lease expires.
9. Any person(s) or organization(s) (referred to below as vendor) is also an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:
   a. The insurance afforded the vendor does not apply to:
      (1) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
      (2) Any express warranty unauthorized by you;
      (3) Any physical or chemical change in the product made intentionally by the vendor;
      (4) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;
      (5) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
      (6) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
      (7) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(8) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(a) The exceptions contained in Sub-Paragraphs **(4)** or **(6)**; or

(b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**b.** This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container entering into, accompanying or containing such products.

**B.** The following is added to Paragraph **4. Other Insurance** in **Section IV – Commercial General Liability Conditions**:

Primary Additional Insured – If a written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in paragraph in **Section II – Who Is An Insured**, this Other Insurance provision is applicable. This insurance is primary. This insurance is also non-contributory which means we will not seek contribution from other insurance available to the person or organization with whom you agree to include in **Who Is An Insured**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Section I – Coverages; Coverage A – Bodily Injury and Property Damage Liability, Paragraph **2.**, Exclusions:

**Punitive Damages**

In consideration of the premium charged, it is understood and agreed that this policy excludes any claim for punitive or exemplary damage whether arising out of acts of insured's, insured's employees or any other person.

# CYBER COVERAGE INSURANCE

**THIS COVERAGE FORM'S AGGREGATE LIMIT OF INSURANCE WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF THE COVERAGE PROVIDED BY THIS COVERAGE FORM, INCLUDING WITHOUT LIMITATION, PAYMENTS FOR DAMAGES, CLAIMS, CLAIM EXPENSES, REGULATORY FINES, LOSSES, PRIVACY BREACH EXPENSES, DATA REPLACEMENT EXPENSES, COMPUTER SYSTEM RESTORATION EXPENSES, EXTORTION THREAT LOSSES, DEFRAUDED FUNDS, PCI FINES, AND BUSINESS INCOME LOSS.**

**FOR THE AVOIDANCE OF DOUBT, CLAIM EXPENSES ARE INCLUDED WITHIN, REDUCE, AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY.**

**THIS COVERAGE FORM PROVIDES INDEPENDENT COVERAGES, TERMS, AND DEFINITIONS.**

**PLEASE READ THE ENTIRE COVERAGE FORM CAREFULLY**

Various provisions in this **Coverage Form** restrict coverage, and coverage is subject to certain conditions precedent set forth in this Coverage Form. Read the entire **Coverage Form** carefully to determine what is and what is not covered, and the rights and duties of the **Named Insured** and the **Company**.

In consideration of the payment of the premium, in reliance on all information provided to the **Company**, and subject to all provisions of this **Coverage Form**, the **Named Insured** and **Company** agree as follows:

# SECTION I: INSURING AGREEMENTS

This Section lists the coverages that apply if indicated in the Schedule of Insurance and have a Limit of Insurance on the Schedule. If no Limit of Insurance is set forth for an Insuring Agreement in the Schedule, coverage has not been purchased for such Insuring Agreement. For coverage under this **Coverage Form**, the applicable **Event** must be first **Discovered** during the **Coverage Form Period** and reported to the **Company** in accordance with Section IV.A.

**A.** LIABILITY COVERAGE

**1.** MEDIA

The **Company** will pay on the **Insured's** behalf the **Damages** resulting from a **Claim** directly arising from a **Media Wrongful Event**, provided the **Media Wrongful Event** is first **Discovered** during the **Coverage Form Period**.

| Coverage | Limits of Insurance / Sublimits of Insurance |
|---|---|
| **COVERAGE FORM AGGREGATE COVERAGE LIMIT OF INSURANCE** | **$50,000** |
| **A. LIABILITY COVERAGE LIMIT (Inclusive of the following Insuring Agreements):** | **$50,000** |
| **1.** Media | |
| **2.** Network Security | |
| **3.** Data Compromise | |
| **a.** Privacy | |
| **b.** Regulatory Coverage | |
| Regulatory Fines (Sublimit) | **$10,000 each Regulatory Proceeding Claim** |
| **B. FIRST PARTY COVERAGE LIMIT (Inclusive of the following Insuring Agreements):** | **$25,000** |
| **1.** Privacy Breach | |
| **2.** System Compromise | |
| **3.** Extortion Threat (Sublimit) | **$10,000 each Extortion Threat Event** |
| **4.** Funds Transfer Fraud (Sublimit) | **$10,000 each Funds Transfer Fraud Event** |
| **5.** Payment Card Industry (Sublimit) | **$10,000 each PCI Security Violation Event** |
| **6.** Business Interruption (Sublimit) | **$0 each Business Interruption Event** |
| **C. PER EVENT DEDUCTIBLE** | **$1,000** |
| **D. PER EVENT BUSINESS INTERRUPTION WAITING PERIOD** | **24 HOURS** |
| **E. COVERAGE FORM PREMIUM** | **$68** |

**COVERAGE FORM PERIOD :** From 09/10/2025 to 09/10/2026
At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

2. NETWORK SECURITY

   The **Company** will pay on the **Insured's** behalf the **Damages** resulting from a **Claim** directly arising from a **Network Security Event**, provided the **Network Security Event** is first **Discovered** during the **Coverage Form Period**.

3. DATA COMPROMISE

   a. PRIVACY
   The **Company** will pay on the **Insured's** behalf the **Damages** resulting from a **Claim** directly arising from a **Privacy Breach Event**, provided the **Privacy Breach Event** is first **Discovered** during the **Coverage Form Period**.

   b. REGULATORY
   The **Company** will pay on the **Insured's** behalf the **Regulatory Fines** and **Claim Expenses** resulting from a **Regulatory Proceeding Claim** directly arising from a **Privacy Breach Event**, provided the **Privacy Breach Event** is first **Discovered** during the **Coverage Form Period**.

**B.** FIRST PARTY COVERAGE

1. PRIVACY BREACH
   The **Company** will pay the **Named Insured** for **Privacy Breach Expenses** directly arising from a **Privacy Breach Event**, provided the **Privacy Breach Event** is first **Discovered** during the **Coverage Form Period**.

2. SYSTEM COMPROMISE
   The **Company** will pay the **Named Insured** for **Data Replacement Expenses** and **Computer System Restoration Expenses** directly arising from a **System Compromise Event**, provided the **System Compromise Event** is first **Discovered** during the **Coverage Form Period**.

3. EXTORTION THREAT
   The **Company** will pay the **Named Insured** for **Extortion Threat Losses** directly arising from an **Extortion Threat Event**, provided the **Extortion Threat Event** is first **Discovered** during the **Coverage Form Period**.

4. FUNDS TRANSFER FRAUD
   The **Company** will pay the **Named Insured** for **Defrauded Funds** first transferred during the **Coverage Form Period** and directly arising from a **Funds Transfer Fraud Event**, provided the **Funds Transfer Fraud Event** is first **Discovered** during the **Coverage Form Period**.

5. PAYMENT CARD INDUSTRY
   The **Company** will pay the **Named Insured** for **PCI Fines** resulting from a **PCI Claim** directly arising from a **PCI Security Violation Event,** provided the **PCI Security Violation Event** is first **Discovered** during the **Coverage Form Period**.

6. BUSINESS INTERRUPTION

   The **Company** will pay the **Named Insured** for the **Business Income Loss** incurred during a **Reconstruction Period** and directly arising from a **Business Interruption Event**, provided the **Business Interruption Event** is first **Discovered** during the **Coverage Form Period**.

## SECTION II: LIMITS OF INSURANCE AND DEDUCTIBLE

**A.** LIMITS OF INSURANCE

1. COVERAGE FORM AGGREGATE COVERAGE LIMIT OF INSURANCE

The Coverage Form Aggregate Coverage Limit of Insurance for the **Coverage Form Period** set forth in the Schedule is the maximum aggregate limit of the **Company's** liability under all Insuring Agreements in this **Coverage Form** combined, regardless of the number of **Claims**, the number of **Losses**, the number of claimants, and the number of Insuring Agreements triggered.

The Liability Coverage Limits, including sublimits, and the First Party Coverage Limits, including sublimits, listed in the Schedule are all part of, and not in addition to, the Coverage Form Aggregate Coverage Limit of Insurance set forth in the Schedule.

**2.** LIABILITY LIMIT OF INSURANCE

If a Limit of Insurance is set forth in the Schedule under the heading "Liability Coverage Limit" for an Insuring Agreement in Section I.A. of this Coverage Form, then such Limit of Insurance is the maximum limit of the **Company's** liability for all **Damages** from all **Claims** and **Related Claims** in the aggregate under that Insuring Agreement, which amount is part of, and not in addition to, the Liability Coverage Limit and the Coverage Form Aggregate Coverage Limit of Insurance for the **Coverage Form Period** set forth in the Schedule.

**3.** FIRST PARTY COVERAGE LIMIT OF INSURANCE
If a Limit of Insurance is set forth in the Schedule under the heading "First Party Coverage Limit" for an Insuring Agreement in Section I.B. of this Coverage Form, then such Limit of Insurance is the maximum limit of the **Company's** liability for eachl **Loss** and **Related Losses** in the aggregate under that Insuring Agreement, which amount is part of, and not in addition to, the First Party Coverage Limit and the Coverage Form Aggregate Coverage Limit of Insurance for the **Coverage Form Period** set forth in the Schedule.

**B.** DEDUCTIBLE

**1.** The **Company** shall only be liable for the amount of **Damages** or **Loss** which is in excess of the applicable Deductible set forth in the Schedule. Such Deductible shall solely be the obligation of the **Named Insured**. The **Company** has no obligation to the **Named Insured** or to any other person or entity to pay all or any portion of any Deductible amount for or on behalf of the **Named Insured**.

**2.** For the purpose of applying the Deductible, the **Named Insured** shall pay one single Deductible amount for **Damages** and **Loss** arising from the same **Event** or **Related Events**, regardless of whether there is more than one **Claim** or **Loss** arising from the same **Event** or **Related Events**.

**C.** RELATED EVENTS, RELATED CLAIMS, RELATED LOSS

**1.** Each **Event** and all its **Related Events** shall be treated as a single **Event**.

**2.** Each **Claim** and all its **Related Claims** shall be treated as a single **Claim**.

**3.** Each **Loss** and all its **Related Losses** shall be treated as a single **Loss**.

**D.** COVERAGE FORM PERIODS

In no event will any **Event** or **Related Event**, **Claim** or **Related Claim**, or **Loss** or **Related Loss** constitute an **Event**, **Claim**, or **Loss** (as applicable) in more than one **Coverage Form Period**.

## SECTION III: DEFENSE AND SETTLEMENT

**A.** DUTY TO DEFEND

**1.** Duty to Defend


Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 48 of 71 PageID #: 81

The **Company** has the right and duty to defend any **Claim** against the **Insured** seeking **Damages** under this **Coverage Form**, even if any of the allegations are groundless, false, or fraudulent. The **Company** has no duty to defend any **Claim** or pay any **Damages** for a **Claim**:

a. Arising from an **Event** not first **Discovered** during the **Coverage Form Period**;

b. Which is not covered by this **Coverage Form**; or

c. Seeking relief not covered by this **Coverage Form**.

**2.** Termination of Duty to Defend

a. The **Company's** right and duty to defend ends when the Coverage Form Aggregate Coverage Limit of Insurance or applicable Limit of Insurance is exhausted by the **Company's** payments or the **Company** deposits the remaining portion of the Coverage Form Aggregate Coverage Limit of Insurance or applicable Limit of Insurance with a court of competent jurisdiction.

b. The **Company's** right and duty to defend ends when the **Company** makes any of the following determinations: (i) the **Claim** arises from an **Event** not first **Discovered** during the **Coverage Form Period**, (ii) the **Claim** is not covered by this **Coverage Form**, or (iii) the **Claim** seeks relief that is not covered by this **Coverage Form**.

**3.** Selection of Counsel

The **Company** shall have the right to select and appoint counsel to defend any **Claim**. The **Insured** shall not appoint counsel to defend any **Claim** without **Approval** in advance. Any costs incurred by an **Insured** for work performed by counsel, when that counsel was not **Approved**, shall be borne by the **Insured** and shall not erode the applicable Deductible set forth in the Schedule or be recoverable under this **Coverage Form**. The **Company** shall have the right to substitute its chosen counsel for any counsel previously selected by the **Insured** without **Approval** unless otherwise prohibited by applicable law.

**B.** SETTLEMENT

The **Company** has the right to investigate, direct the defense of, and/or settle any **Claim** as the **Company** deems expedient.

**C.** COMPANY'S APPROVAL REQUIRED

It is a condition precedent for coverage under this **Coverage Form** that the **Insured** shall not admit any liability, make any payment, assume any obligation, incur any expense, enter into or negotiate any settlement, stipulate to any judgment or award, or dispose of any **Claim** without **Approval**.

## SECTION IV: REPORTING REQUIREMENTS

**A.** INSURED'S DUTY TO REPORT

**1.** NOTICE IS A CONDITION PRECEDENT TO COVERAGE

It is a condition precedent to coverage under this **Coverage Form** that if a **Knowledge Group Member** first **Discovers** during the **Coverage Form Period** any **Event** (including each **Related Event**, if any), **Claim** (including each **Related Claim**, if any), **Loss** (including each **Related Loss**, if any), or **Circumstances**, an **Insured** must provide written notice to the **Company** of such **Event**, **Claim**, **Loss** or **Circumstances**, such notice to include the information set forth in Section IV. A. 2 below, and to be provided as soon as practicable, but in all cases no later than thirty (30) days after first **Discovered**.

It is a condition precedent to coverage under this **Coverage Form** that if the **Company** sends written notice to the **Named Insured** that this **Coverage Form** is being cancelled for non-payment of premium, the **Named Insured** must provide written notice to the **Company** of any

**Event**, **Claim**, **Loss** or **Circumstances** in accordance with the prior paragraph, but in any event no later than the earlier of: (i) thirty (30) days after such **Event**, **Claim**, **Loss** or **Circumstances** is first **Discovered**, and (ii) prior to the effective date of the cancellation.

Such notices must be sent to the **Company**. Notice to any **Vendor** (including lawyers, experts, and litigation support staff) does not constitute notice to the **Company** of an **Event**, **Claim**, **Loss** or **Circumstances** under this **Coverage Form**.

**2.** INFORMATION TO BE INCLUDED IN NOTICES

In providing the notice under A.1, of this Section IV, each notice must include a written report with the following information:

**a.** If notice is of an **Event**, then a description of the **Event**, when and how the **Knowledge Group Member** first **Discovered** the **Event**, the **Circumstances** giving rise to the **Event**, and any **Claim** or **Loss** reasonably expected to arise from that **Event**.

**b.** If notice is of a **Claim**, or of an **Event** or **Circumstances** reasonably likely to give rise to a **Claim**, then a description of the **Claim**; when and how the **Knowledge Group Member** first **Discovered** the **Claim**; the names of the claimant or potential claimant, the **Impacted Individuals**, the **Impacted Entities**, and any other persons or entities involved; the specific **Third Party Liability Event** or regulatory proceeding which may form the basis of the **Claim**; all pleadings and other documents setting forth the **Claim** or notifying an **Insured** of the **Claim**; the **Circumstances** giving rise to the **Claim**; and the nature and extent of any potential **Damages**.

**c.** If notice is of a **Loss**, or of an **Event** or **Circumstances** reasonably likely to give rise to a **Loss**, then a description of the **Loss**, when and how the **Knowledge Group Member** first **Discovered** the **Loss**, the **Circumstances** giving rise to the **Loss**, and the nature and extent of any potential **Loss**.

**d.** If the notice is of **Circumstances**, then**,** in addition to the information in A.2.a., b., and c. above, a description of the **Circumstances**, when and how the **Knowledge Group Member** first **Discovered** the **Circumstances**, the reason the **Knowledge Group Member** believes such **Circumstances** are reasonably likely to result in an **Event**, **Claim** or **Loss**, and the nature and extent of any potential **Damages** or **Loss**.

**3.** REPORTS OF **MALICIOUS CODES** AND **EXPLOITS**

For **Network Security Events**, **System Compromise Events**, and **Extortion Threat Events** based upon, arising out of, attributable to, caused by or resulting from **Malicious Code** or **Exploit**, the **Named Insured** must provide the **Company** as soon as possible with (a) any identifying characteristics, markers, or other information which may identify the **Malicious Code** or **Exploit** involved in the **Event**, and (b) a written report by a forensic **Vendor** which identifies the **Malicious Code** or **Exploit** involved in the **Event**, such report be provided to the **Company** no later than thirty (30) days after the first **Discovery** of such **Event**.

For all other **Events**, such a report must be provided at the **Company's** request.

**B.** NO COVERAGE

**1.** No coverage under this **Coverage Form** will be provided for:

**a.** Any **Damages** incurred or paid prior to the time the **Company** is notified of the **Claim** or any **Related Claim** pursuant to Section IV.A.; or

**b.** Any **Loss** incurred or paid prior to the time the **Company** is notified of a **Loss** or any **Related Loss** pursuant to Section IV.A. However, this prior notice requirement does not apply to (i) **Defrauded Funds** if notice of the **Funds Transfer Fraud Event** is provided in compliance with Section IV. A., or to (ii) **Business Income Loss**, if notice of the **Business Interruption Event** is provided in compliance with Section IV. A.

2. No coverage under this **Coverage Form** will be provided if any **Insured** reports any matter knowing or having reason to know it to be false or fraudulent.

C. DETERMINATION OF FIRST DISCOVERY

1. Each **Claim** and all its **Related Claims**, whenever made, will be deemed a single **Claim** first **Discovered** on the earlier of the following:

   a. When the **Event** giving rise to the **Claim** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence; and

   b. When the earliest of the **Related Claims** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence.

   This Section IV.C.1. applies regardless of the following:

   a. The number of **Related Claims**;

   b. The number or identity of **Impacted Individuals**, **Impacted Entities**, or any other persons, entities, or claimants involved;

   c. Whether the **Related Claims** are asserted in a class action or otherwise; or

   d. The timing of the **Related Claims**, even if the **Related Claims** were received or **Discovered** in more than one **Coverage Form Period**.

2. **Loss** and all its **Related Losses**, whenever occurring, will be deemed a single **Loss** first **Discovered** on the earlier of the following:

   a. When the **Event** giving rise to the **Loss** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence; and

   b. When the earliest of the **Related Losses** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence.

   This Section IV.C.2. applies regardless of the following:

   a. The number of **Related Losses**;

   b. The number or identity of **Impacted Individuals**, **Impacted Entities**, or any other persons or entities involved; or

   c. The timing of the **Related Losses**, even if the **Related Losses** occurred or were **Discovered** in more than one **Coverage Form Period**.

3. Each **Event** and all its **Related Events**, whenever occurring, will be deemed a single **Event** first **Discovered** on the earliest of the following:

   a. When the **Event** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence;

   b. When the earliest of the **Related Events** was first **Discovered**, or could have been **Discovered** through the exercise of due diligence; and

   c. When the earliest **Circumstances** were first **Discovered**, or could have been **Discovered** through the exercise of due diligence.

   This Section IV.C.3. applies regardless of the following:

   a. The number of **Related Events** or **Circumstances**;

   b. The number or identity of **Impacted Individuals**, **Impacted Entities**, or any other persons, entities, or claimants involved; or

**c.** The timing of the **Related Events** or **Circumstances**, even if the **Related Events** or **Circumstances** occurred or were **Discovered** in more than one **Coverage Form Period**.

For purposes of this Section IV.C., due diligence includes but is not limited to compliance with Section V.

# SECTION V: DUE DILIGENCE AND COOPERATION

**A.** DUE DILIGENCE REQUIREMENTS

**1.** It is a condition precedent to coverage under this **Coverage Form** that the **Named Insured** must, at its sole cost and expense, use due diligence to prevent and mitigate against any **Damages** or **Loss**, and to protect and monitor the security of **Protected Information** and its **Computer System**. This includes, but is not limited to:

**a.** Providing and maintaining appropriate physical security for the **Named Insured's** premises and the **Computer System**;
**b.** Performing and installing all available software updates and patches as soon as practicable but in no event later than thirty (30) days from the time the update or patch becomes available;
**c.** Installing, maintaining, monitoring, and updating firewalls, virus scans and anti-virus software, and ensuring that the foregoing are active and in use for the **Computer System**;
**d.** Providing and running a data backup system at appropriate intervals, including without limitation performing a full backup of the **Computer System** at least once every thirty (30) days;
**e.** Providing and maintaining password protection and encryption for all **IOT Devices**, **Portable Devices** and **Peripheral Hardwired Devices**;
**f.** Providing and maintaining encryption for **Protected Information** and financial transactions such as credit card, debit card, and check processing; and
**g.** Providing and maintaining secure disposal procedures for files containing **Protected Information** no longer needed for use.

**2.** It is a condition precedent to coverage under this **Coverage Form** for any **Funds Transfer Fraud Event** that the **Named Insured** must have a written policy in place which requires a **Knowledge Group Member** to contact the party identified as requesting the funds transfer to confirm the requested amount and the payment instructions (payee name, address and account number, and routing number, if applicable) either in person or by phone, using a phone number obtained from a source other than the funds transfer request communication, when the funds transfer request is for a new payee or when the request includes or has been recently preceded by any change in payment instructions from previous requests.

**B.** COOPERATION

The **Insured** agrees not to take any action, or fail to take any requested action, that prejudices the **Insured's** rights or the **Company's** rights with respect to a **Claim** or **Loss**. In the event of a **Claim** or a **Loss**, the **Insured** must do the following upon the **Company's** request:

**1.** Fully assist and cooperate with the **Company** in the conduct, defense, investigation, negotiation, and settlement of a **Loss** or **Claim** or investigation of coverage of a **Loss** or **Claim**;

**2.** Submit to an examination under oath; provide the **Company** with written statements; attend meetings and negotiations; produce and make available all information, books, records, documents, and other materials which the **Company** deems relevant; and authorize the **Company** to obtain records and other information;

3. Take additional steps to protect the **Computer System** and **Protected Information** from further loss or damage and keep a record of the expenses necessary to do so;
4. Attend hearings, depositions, proceedings, trials, and appeals;
5. Assist the **Company** in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and pursuing or enforcing any right of contribution or indemnity against a person or entity who may be liable to the **Insured**;
6. Accept the **Company's** assignment of counsel unless otherwise prohibited by applicable law; and
7. Provide reports of forensic **Vendors** that identify the **Malicious Code** or **Exploit** involved in the **Event** as soon as possible; provided that this provision supplements, and does not replace, the reporting requirements set forth in Section IV.A.

## SECTION VI: EXCLUSIONS

**A.** The **Company** shall not be liable to pay, indemnify or reimburse for any **Claim**, **Damages** or **Losses** based upon, arising out of, attributable to, caused by or resulting from, whether actual or alleged:

1. Any of the following:

   **a.** Intentional creation or distribution of **Malicious Code** or **Exploit** by any **Insured**;
   **b.** Unauthorized tampering with any **Computer System** by any **Insured**; or
   **c.** Any dishonest, fraudulent, criminal, malicious, or willful act, error, or omission by any **Insured**.

2. Any **Mass Event**.

3. Any of the following:

   **a.** Failure, interruption of service, or defect by third parties;
   **b.** Misconfiguration of information technology systems, including but not limited to domain name system configuration changes and domain name hijacking, by third parties;
   **c.** Unauthorized access or unauthorized use of a third party's computer system;
   **d.** Malicious insider activity of or by third parties; or
   **e.** Distribution of **Malicious Code** or **Exploit** by third parties,

   in each case that impact the **Computer System** and cause **Claims, Losses** or **Damages.** For the purposes of this exclusion third parties shall refer to (i) any cloud service provider; (ii) any other entity providing to an **Insured**, or servicing for an **Insured**, any hardware or software over the internet; or (iii) any other entity providing software as a service, infrastructure as a service, managed security as a service, platform as a service, or any form of cloud data storage as a service to an **Insured**.

4. Any mechanical or service failure, interruption of service, or defect of:

   **a.** Telephone, communications or data transmission lines, equipment or infrastructure;
   **b.** Internet system, internet service provider or cloud service provider, device or computer system (other than a **Computer System**, or an internet system owned or leased by and operated under the control of the **Named Insured**); or
   **c.** Electricity (including but not limited to power interruption, surge, brownout or blackout), gas, water or other utilities or their equipment or infrastructure (including, but not limited to power lines).

5. Shortcomings, errors or mistakes in any set of instructions (oral, written or electronic), scripts, program, code or software that is executed, run or installed on the **Computer System** either (a) during the course of a legitimate and authorized upgrade, update or

maintenance process of any software, firmware or hardware on or part of a **Computer System**, or (b) that are present within the firmware or hardware of a **Computer System** as a result of the manufacturing process, in each case for (a) and (b), for the purposes of this exclusion, that directly causes **Claims**, **Losses** or **Damages.**

**6.** Any of the following:

**a.** Bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time;
**b.** Physical injury to tangible property, including all resulting loss of use of that property; or
**c.** Loss of use of tangible property that is not physically injured.

This exclusion shall not apply to a **Claim** for mental injury, mental anguish, or emotional distress directly resulting from a **Privacy Breach Event** or a **Media Wrongful Event**. For purposes of this exclusion, electronic data is not considered tangible property.

**7.** Any of the following:

**a.** Nuclear reaction, nuclear radiation, radioactive contamination, radioactive substance, electromagnetic field, electromagnetic radiation, or electromagnetism;
**b.** Pathogenic or poisonous biological or chemical materials, whether or not man-made, including communicable disease events;
**c.** War, invasion, acts of foreign enemies, hostilities (whether war is declared or not), riot, civil unrest, rebellion, revolution, insurrection, war-like action, coup, usurped powers or military power, including but not limited to those by state-sponsored actors, and action taken by government authority in hindering or defending against any of these; or
**d.** Fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event.

**8.** Any unlawful or unauthorized obtaining, gathering, collecting, acquiring, sharing, using, distribution or sale by an **Insured** of any **Protected Information**. Provided, however, this exclusion shall not apply to **Privacy Breach Expenses**, **Regulatory Proceedings Claims**, or **PCI Claims**, in each case directly arising from a **Privacy Breach Event**, and which are otherwise covered under this **Coverage Form.**

**9.** The unsolicited dissemination of any communication to actual or prospective customers of the **Named Insured**, or to any other third party.

**10.** Any violation of the Telecommunications Act, the CAN-SPAM Act, or any other federal, state or local legislation, regulation or law or common law, either: (a) protecting a person's or entity's right of seclusion or privacy (other than a **Privacy Law**), or (b) addressing the unsolicited distribution, transmission or dissemination of any communication.

**11.** Any gaining of any profit or advantage to which the **Insured** is not legally entitled.

**12.** Any patent infringement or theft, copying, display, or publication of any patent, process, or trade secret.

**13.** Any breach of contract, agreement, understanding, warranty (including but not limited to product warranty), or other guarantee or promise. This exclusion shall not apply to the following:

**a.** Solely with respect to actual or alleged breach of contract, liability that would have attached to the **Named Insured** in the absence of such contract; or
**b.** **PCI Fines**.

**14.** Any liability or obligation the **Named Insured,** or anyone acting on behalf of the **Named Insured**, assumes under any contract, agreement, understanding, warranty (including but not limited to product warranty), or other guarantee or promise. This exclusion shall not apply to the following:

**a.** Liability that would have attached to the **Named Insured** in the absence of any such

contract, agreement, understanding, warranty or other guarantee or promise; or

b. **PCI Fines**.

15. Any seizure, nationalization, confiscation, destruction, deletion or expropriation of any **Protected Information** or any **Computer System** held or used by an **Insured** by order of any governmental authority.

16. Any of the following:

   a. Violation of any federal, state, local, foreign legislation, regulation, or law prohibiting any restraint of trade or antitrust activity;
   b. Any price fixing, price discrimination, monopoly or monopolization, predatory pricing, unfair competition, collusion, or conspiracy;
   c. Any unfair, false, misleading, or deceptive trade or business practice; or
   d. Any false, misleading, deceptive, or fraudulent statement or representation in advertising or promoting the products, services, or business of the **Named Insured**; provided, however, that this exclusion will not apply to a **Claim** directly arising from a **Media Wrongful Event**.

17. Any of the following:

   a. Discrimination of any kind; or
   b. Wrongful employment practice of any kind.

18. Any **Circumstances**, **Claim, Event**, or **Loss**:

   a. That was the subject of notice to another insurer or potential indemnitor prior to the Effective Date of this **Coverage Form**; or
   b. **Discovered** prior to the Effective Date of this **Coverage Form,** or could have been **Discovered** through the exercise of due diligence prior to the Effective Date of this **Coverage Form**.

19. The presence, discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, oil or other petroleum substances or derivatives, waste materials or other irritants, contaminants, pollutants or any other substances, including asbestos, fungus, mold and lead, which are or may be injurious to public health, property or the environment ("hazardous substances"), including but not limited to:

   a. The cost of cleanup or removal of hazardous substances;
   b. The cost of such actions as may be necessary to monitor, assess and evaluate, the presence, discharge, dispersal, escape, release, or threat of same, of hazardous substances;
   c. The cost of disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to property or the environment, which may otherwise result; or
   d. Any cost, based upon, arising out of, attributable to, caused by or resulting from, or involving in any way any government direction or request that the **Named Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize hazardous substances.

**B.** The **Company** shall not be liable to pay for any **Claim** or **Damages** based upon, arising out of, attributable to, caused by or resulting from any **Claim** or **Damages**, whether actual or alleged, by any of the following:

1. Any **Insured** against another **Insured**, except for an otherwise covered **Claim** by an **Insured** under Section I.A.3.a.;

2. Solely in the case of a **Privacy Breach Event**, by any person or entity other than an **Impacted Individual**, an **Impacted Entity**, or (solely in the case of a **Regulatory**

**Proceeding Claim**) a federal or state regulatory body or regulator;

3. Any entity owned or controlled by, or which is under common ownership or control with, the **Named Insured**;
4. Any person or entity which owns or controls the **Named Insured**; or
5. Any independent contractor of the **Named Insured**.

# SECTION VII: GENERAL CONDITIONS

**A.** TERMINATION

The cancellation and nonrenewal provisions of the policy to which this **Coverage Form** is attached shall apply to this **Coverage Form**. This **Coverage Form** shall remain in effect until the expiration of the **Coverage Form Period** unless:

1. The policy to which this **Coverage Form** is attached is cancelled or non-renewed prior to the expiration of the **Coverage Form Period**; or
2. This **Coverage Form** is removed at the request of the **Named Insured**, such removal to be confirmed by further endorsement to the policy.

**B.** CHANGE IN CONTROL

1. For purposes of this **Coverage Form**, a "Sale Transaction" means either of the following that occurs during the **Coverage Form Period**:

   **a.** The **Named Insured** consolidates or merges with or into, or sells more than 50% of its assets to, any other person or entity or group of persons or entities acting in concert, such that the **Named Insured** is not the surviving entity; or

   **b.** Any person or entity or group of persons or entities acting in concert acquire more than 50% of the issued and outstanding voting equity securities of the **Named Insured** or control voting rights representing the right to vote for election of or to appoint more than 50% of the directors or trustees of the **Named Insured.**

   In the event of a Sale Transaction, this **Coverage Form** shall continue in full force and effect as to any **Event** first **Discovered** prior to the Sale Transaction. There shall be no coverage under this **Coverage Form** for any **Event** first **Discovered** after the Sale Transaction. The **Named Insured** shall give the **Company** written notice of the Sale Transaction as soon as practicable but not later than thirty (30) days after the Sale Transaction.

2. For purposes of this **Coverage Form**, an "Acquisition Transaction" means any of the following that occurs during the **Coverage Form Period**:

   **a.** The **Named Insured** consolidates or merges with any other person or entity or group of persons or entities acting in concert such that the **Named Insured** is the surviving entity;

   **b.** The **Named Insured** acquires the assets of any other person or entity or group of persons or entities acting in concert, where such assets represent a market value, as of the date of such acquisition, of 10% or greater of the **Named Insured's** market value;

   **c.** The **Named Insured** acquires or creates a new entity or subsidiary such that the **Named Insured** holds more than 50% of the issued and outstanding voting equity securities or controls voting rights representing the right to vote for election of or to appoint more than 50% of the directors or trustees of such entity or subsidiary; or

   **d.** The subsequent addition of another entity or person as a **Named Insured** in addition to the entity or person listed at the time of the commencement of the **Coverage Form**

**Period** as the **Named Insured** on the Policy Declarations to which this **Coverage Form** is attached.

In the event of an Acquisition Transaction, then there is coverage under this **Coverage Form** for such additional entity, subsidiary or person for any **Claim**, **Loss**, **Event**, or **Circumstances** first **Discovered** within the sixty (60) day period immediately following the Acquisition Transaction or until the end of the **Coverage Form Period**, whichever occurs first. There is no coverage for such additional entity, subsidiary or person after that time period unless (i) as soon as practicable but no later than thirty (30) days after the Acquisition Transaction, the **Named Insured** provides the **Company** with notice and the particulars of such Acquisition Transaction; (ii) the **Company** agrees to extend the coverage of this **Coverage Form** to such surviving **Named Insured**, newly acquired or created entity or subsidiary, or additional entity or person, as applicable, and the **Company** amends the terms of this **Coverage Form** accordingly; and (iii) the **Named Insured** pays any additional premium when due. Such extended coverage does not apply to any **Claim**, **Loss**, **Event**, or **Circumstances** first **Discovered** or that could have been first **Discovered** (either by a **Knowledge Group Member** or equivalent in such additional entity or subsidiary) through the exercise of due diligence (including but not limited to in compliance with Section V) before the Acquisition Transaction.

**C.** BANKRUPTCY

Bankruptcy or insolvency of the **Named Insured** will not relieve any **Insured** or the **Company** of any obligations nor deprive the **Company** of its rights and defenses under this **Coverage Form** unless such obligations are in violation of applicable law.

**D.** EXCESS COVERAGE

This insurance shall be excess of any other insurance that applies to any **Claim**, **Event**, **Loss**, **Circumstances** or **Damages** covered hereunder and shall not contribute with any or all other insurance, including any deductible or retention, whether collectible or not. For avoidance of doubt, this insurance is specifically on an excess basis of any or all crime insurance policies that may be available with respect to any **Funds Transfer Fraud Event**.

**E.** ASSIGNMENT

This **Coverage Form** and any and all interests and rights hereunder are not assignable without **Approval**.

**F.** TERMS TO CONFORM TO APPLICABLE LAW

Where necessary, the **Company** shall amend the terms and conditions of this **Coverage Form** to conform to applicable law.

**G.** TERRITORY

This **Coverage Form** applies to acts committed or **Losses** occurring anywhere in the world except as set forth under “Sanctions” in Section VII.H.; provided, however, that any **Claim** must be brought in the United States.

**H.** SANCTIONS

This Coverage Form does not apply, and the **Company** shall not be liable to provide coverage or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would be in violation of any trade or economic sanctions law or regulation applicable to the **Company’s** jurisdiction of domicile or those of another jurisdiction with which the **Company** is legally obligated to comply, including without limitation any trade or economic sanctions or embargo by the United States.

**I.** LEGAL ACTION AGAINST THE COMPANY

1. No legal action or claim may be brought against the **Company** based upon, arising out of, attributable to, caused by or resulting from this Coverage Form unless the following criteria are met:

   a. There has been full compliance by the **Insureds** with all the terms and conditions of this **Coverage Form**; and
   b. The action is brought within the limit of time provided under applicable law, but in no event later than sixty (60) months from the date the **Knowledge Group Member** first **Discovers** the earliest of any **Circumstances**, **Claim**, **Event** or **Loss** pertaining to such action.

2. In the event that the requirements set forth in Section VII.I.1. have been complied with, with respect to a legal action or claim against the **Company**, the amount of damages and losses shall be limited to the following:

   a. The amount of a non-appealable order of a court or other tribunal (e.g., arbitral panel) resolving such dispute on the merits; or
   b. The amount for which the legal action or claim was settled, provided that the settlement was agreed to in accordance with the terms and conditions of this **Coverage Form**.

**J.** NO JOINDER

No individual or entity shall have any right under this **Coverage Form** to join the **Company** as a party to any **Claim** to determine the liability of the **Insured**, nor shall the **Company** be impleaded by the **Insured** or the **Insured's** legal representative in any such **Claim**.

**K.** SUBROGATION

In the event of any payment under this **Coverage Form**, the **Company** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery thereof, and the **Insured** shall execute all papers required and shall do everything that may be necessary to preserve and secure such rights, including the execution of such documents necessary to enable the **Company** to effectively bring suit in the name of the **Insured**.

The **Company** assumes no duty to recover any amounts paid under this **Coverage Form**; however, any amounts as may be recovered pursuant to the exercise of the **Company's** rights of subrogation shall be applied as follows: (i) to the repayment of expenses incurred by the **Company** in exercising any rights of subrogation; (ii) to **Damages** and **Losses** incurred by the **Named Insured** in excess of the Limits of Liability hereunder; and (iii) to **Damages** and **Losses** paid by the **Company**.

**L.** HEADINGS

The titles of paragraphs, sections, provisions, or endorsements of or to this **Coverage Form** are intended solely for convenience and reference, and are not deemed in any way to limit or expand the provisions to which they relate and are not part of the **Coverage Form**.

## SECTION VIII: DEFINITIONS

Except where this Coverage Form expressly or by implication indicates otherwise, the plural of any term includes the singular, and the singular of any term includes the plural. To the extent of any conflict between defined terms in this **Coverage Form** and the policy to which this **Coverage Form** is attached, then the definitions set forth in this **Coverage Form** shall prevail.

**A.** **Approval** and **Approved** means the **Company's** written approval, including in response to a written request for approval by the **Named Insured**. Where **Approval** is required in this **Coverage Form** the **Named Insured** must promptly submit such written request for **Approval** to the **Company**.

**B.** **Business Income Loss** means the aggregate of **Extra Expenses** and **Reconstruction Period Net Income**.

**C.** **Business Interruption Event** means a total or partial disruption in the **Named Insured's** business operation directly arising from a **System Compromise Event**.

**D.** **Business Interruption Waiting Period** means the **Business Interruption Waiting Period** specified in the Schedule. The **Business Interruption Waiting Period** begins at the time each and every **Business Interruption Event** is first **Discovered**.

**E.** **Circumstances** means facts, subjects, situations, decisions, causes, persons, transactions, events, acts, errors or omissions, or class of persons or events, in each case which could reasonably be likely to give rise to a **Claim**, **Loss**, or **Event**, as applicable.

**F.** **Claim** means each of the following:

1. For the purposes of **Third Party Liability Events**, a **Third Party Claim**; and
2. For the purposes of Section I. A. 3. "b.", the REGULATORY INSURING AGREEMENT, a **Regulatory Proceeding Claim**.

**G.** **Claim Expenses** means each of the following, with respect to any **Claim:**

1. Reasonable and necessary fees, costs and expenses charged by any **Vendor** and **Approved**, such **Vendor Approved** in advance (including lawyers, experts, and litigation support staff) for the investigation, adjustment, settlement and/or defense of such **Claim**;
2. Post-judgment interest which accrues after a **Final Judgment**; and
3. The premiums for appeal, attachment, or similar bonds, but only for bond amounts **Approved** and within the remaining applicable Limits of Insurance. The **Company** does not have any obligation to furnish these bonds.

**Claim Expenses** do not include the following:

i. Salaries, wages, fees, remuneration, overhead, benefits, or expenses of the **Company** or the **Insureds**;
ii. Fees, costs, and expenses incurred prior to the time that a **Claim** was reported to the **Company**;
iii. Fees, costs, and expenses incurred without **Approval**;
iv. Fees, costs, and expenses incurred to improve or upgrade the **Computer System** beyond what it was prior to the **Claim**; or
v. Fees, costs, and expenses to comply with any injunctive or other non-monetary equitable, declaratory, regulatory, or administrative relief.

**H.** **Company** means the Insurer as titled on the Schedule page of this **Coverage Form**.

**I.** **Computer System** means a computer or series of interconnected computers owned or leased by and operated under the control of the **Named Insured**. **Computer System** also includes the following, but only if owned or leased by and operated under the control of the **Named Insured**:

1. **Electronic Media**;
2. **Portable Devices**;
3. **IOT Devices**; and
4. **Peripheral Hardwired Devices**.

**Computer System** does not include a computer system the **Named Insured** operates for others.

**J.** **Computer System Restoration Expenses** means the reasonable and necessary fees, costs and expenses charged by a **Vendor** designated in writing or **Approved** in advance to restore the software in the **Computer System**, if damaged by a **System Compromise Event**, to its operating performance immediately before the **System Compromise Event**, including costs to reinstall, or replace the software, or the configuration or correction of the configuration of the **Computer System**. If such software cannot reasonably be restored, the term **Computer System Restoration Expenses** means the reasonable and necessary costs and expenses incurred by the **Vendor** to reach this determination.

**Computer System Restoration Expenses** does not include any of the following:

1. The cost of new or replacement hardware;
2. Salaries, wages, fees, remuneration, overhead, benefits, or expenses of the **Company** or the **Insureds**;
3. Fees, costs or expenses to enhance, upgrade or otherwise modify, or improve the **Computer System** beyond the level that existed immediately prior to the occurrence of a **System Compromise Event**, including but not limited to costs and expense to replace, remediate or improve the **Computer System,** or identify or remove software programs errors, malware, computer viruses or vulnerabilities or create or develop software or trade secrets; or
4. Any costs in excess of the cash value of the **Computer System** as of the date of the **System Compromise Event**.

**K.** **Corporate Information** means any business information of a third party, which is not available to the general public and is provided to an **Insured** subject to a mutually executed written confidentiality agreement with the **Named Insured**, or which the **Named Insured** is legally required to maintain in confidence. The **Corporate Information** must be in the direct care, custody or control of the **Named Insured** in the ordinary course and scope of its business operations. The term **Corporate Information** does not include **Personally Identifiable Information**.

**L.** **Crypto currency** means a digital or virtual currency that uses crypto currency for security and uses encryption techniques to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank.

**M.** **Damages** means each of the following:

1. With respect to a **Third Party Claim**, **Claim Expenses** and the following monetary amounts the **Insured** becomes legally obligated to pay resulting from a **Final Judgment** or settlement:
   **a.** Compensatory damages,
   **b.** Attorney's fees and other litigation costs included in any **Final Judgment**, and
   **c.** Pre-Judgment interest included in any **Final Judgment**.
2. With respect to a **Regulatory Proceeding Claim**, **Claim Expenses** and only the **Regulatory Fines** the **Insured** becomes legally obligated to pay.

**Damages** does not include any of the following:

**i.** Any monetary amount which the **Insured** is not legally obligated to pay;
**ii.** Any monetary amount which is not insurable under the applicable law or jurisdiction pursuant to which the **Coverage Form** is construed;
**iii.** Past, present and future earned and unearned royalties, profits, fees, costs, expenses, or commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;
**iv.** Consideration charged by, paid to or owed to the **Insured**, including but not limited to restitution, disgorgement, reduction, or return of any consideration;
**v.** Fees, costs, and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory, or administrative relief;
**vi.** Discounts, prizes, awards, coupons, or other incentives offered to the **Insured's** clients, **Impacted Individuals**, or **Impacted Entities**;
**vii.** Civil or criminal fines or penalties imposed by law, except **Regulatory Fines**;
**viii.** Punitive and exemplary damages;
**ix.** The multiple portion of any multiplied damages; or
**x.** Taxes, loss of tax benefit or fines, tax penalties or sanctions imposed against the **Named Insured**.

**N.** **Data Replacement Expenses** means the reasonable and necessary fees, costs and expenses charged by a **Vendor** designated in writing or **Approved** in advance to research, re-create or replace electronic data on the **Computer System** that is damaged by a **System Compromise Event**, provided that such research, re-creation or replacement must be from written records or

electronic backup of such electronic data. If such electronic data cannot reasonably be researched, recreated or replaced, the term **Data Replacement Expenses** means the reasonable and necessary costs and expenses incurred by such **Vendor** to reach this determination.

**Data Replacement Expenses** does not include any of the following:

1. Salaries, wages, fees, remuneration, overhead, benefits, or expenses of the **Company** or the **Insureds**;
2. Fees, costs or expenses to enhance, upgrade or otherwise modify, or improve the **Computer System** beyond the level that existed immediately prior to the occurrence of a **System Compromise Event**, including but not limited to updating, upgrading or enhancing electronic data or replacing, remediating or improving any **Computer System**, or improving networks and data security practices, procedures or policies;
3. Re-creation or replacement of software programs or operating systems that are not commercially available; or
4. Re-creation or replacement of data that is obsolete, unnecessary or useless to the **Named Insured**.

**O.** **Defrauded Funds** means the value of funds that are transferred by the **Named Insured** (with the approval of a **Knowledge Group Member**) to a third party directly in response to a **Funds Transfer Fraud Event**, that are in the form of check, wire transfer, credit card payment, debit card payment or **Crypto currency**. **Defrauded Funds** excludes cash payments.

**P.** **Discovers** or **Discovered** means the time a **Knowledge Group Member** receives, receives notice of, or becomes aware of any of the following: (i) any **Event**; (ii) any **Circumstances**; or (iii) any **Claim** or **Loss** or potential **Claim** or **Loss**, regardless of the potential amount of the **Claim** or **Loss**.

**Q.** **Electronic Media** means any electronic data which is unique to the **Named Insured**, including audio or visual information, ready-for-use applications, programs, and other content in machine-readable format.

**R.** **Electronic Media Advertising** means **Electronic Media** which advertises or promotes the **Named Insured's** products or services.

**S.** **Coverage Form** means this Coverage Form issued by the **Company**.

**T.** **Coverage Form Period** means the **Coverage Form Period** set forth in the Schedule.

**U.** **Event** means a **Media Wrongful Event**, a **Network Security Event**, a **Privacy Breach Event**, a **System Compromise Event**, an **Extortion Threat Event**, a **Funds Transfer Fraud Event**, a **PCI Security Violation Event**, or a **Business Interruption Event.**

**V.** **Exploit** means a vulnerability in a **Computer System** or software through which **Malicious Code**, or software designed to find, create, or take advantage of such vulnerability, can enter such **Computer System**.

**W.** **Extortion Threat Event** means a credible threat, or a series of credible threats, by a third party, to cause or continue to cause one or more (i) **System Compromise Events** or (ii) the **Unauthorized Access or Unauthorized Use** of **Protected Information**, in each case accompanied by a demand by such third party for money (including **Crypto currency**) from the **Named Insured** or a **Knowledge Group Member** where the payment of such money is a condition of mitigation or removal of such threat or series of threats.

**X.** **Extortion Threat Losses** means the **Funds Paid** by the **Named Insured** (with the approval of a **Knowledge Group Member**) in response to an **Extortion Threat Event** to the party that made the **Extortion Threat Event**, and the reasonable and necessary fees, costs, and expenses charged by a **Vendor** (including lawyers, experts, and litigation support staff) to respond to, confirm, negotiate or pay an **Extortion Threat Event**.

Y. **Extra Expenses** means the amount of (i) reasonable and necessary expenses that the **Named Insured** directly incurs during a **Reconstruction Period**, with **Approval** in advance, to reduce or avoid **Reconstruction Period Net Income** as a result of a **Business Interruption Event**, in excess of (ii) its actual normal operating expenses that the **Named Insured** would have incurred during the same period had no **Business Interruption Event** occurred.

**Extra Expenses** do not include any of the following:

1. Any contractual penalties; or
2. Any costs to update or upgrade the **Computer System** beyond the level that existed prior to the occurrence of the **Business Interruption Event**.

Z. **Final Judgment** means a non-appealable order of a court or other tribunal (e.g., arbitral panel) resolving, on the merits, a dispute between an **Insured** and a third party (including government agencies), as to which either no further appeal is possible or a decision is made with **Approval** not to appeal further.

AA. **Funds Transfer Fraud Event** means the intentional deception of an **Insured** by a third party intended to cause an **Insured** to transfer funds under the **Named Insured's** control (with the approval of a **Knowledge Group Member**) to a third party not authorized to receive such funds.

BB. **Funds Paid** means the value of the funds paid that are in the form of check, wire transfer, credit card payment, debit card payment or **Crypto currency**. **Funds Paid** excludes cash payments. For **Funds Paid** in **Crypto currenc**y, the value of the **Funds Paid** shall be the value of the **Crypto currency**, in U.S. dollars, at the time of payment.

CC. **Impacted Entities** means any business, entity or organization whose **Corporate Information** is lost, stolen, unintentionally or unknowingly disseminated, or accidentally published by a **Privacy Breach Event** covered under this **Coverage Form**. This definition is subject to all of the following provisions:

1. **Impacted Entity** does not include any **Impacted Individual**; and
2. **Impacted Entity** may be domiciled anywhere in the world.

DD. **Impacted Individuals** means any person whose **Personally Identifiable Information** is lost, stolen, unintentionally or unknowingly disseminated, or accidentally published by a **Privacy Breach Event** covered under this **Coverage Form**. This definition is subject to all of the following provisions:

1. **Impacted Individual** does not include any **Impacted Entity**. Only an individual person may be an **Impacted Individual**; and
2. **Impacted Individual** may reside anywhere in the world.

EE. **IOT Device** means any electronic device (other than a **Portable Device**) or hardwire connected device, that connects to the **Computer System** directly or through a **VPN**. **IOT Devices** include, but are not limited to, smart printers, industrial control systems, security systems, smart speakers, smart televisions and smart appliances.

FF. **Insured** means the **Named Insured**, **Knowledge Group Members**, and the **Named Insured's** employees but only while such employees are acting within their capacity as such for the **Named Insured**.

GG. **Knowledge Group Member(s)** mean the **Named Insured**'s principals, officers, directors, and risk managers, but only while acting in their capacity as such for the **Named Insured**.

HH. **Loss(es)** means **Privacy Breach Expenses**, **Data Replacement Expenses**, **Computer System Restoration Expenses**, **Extortion Threat Losses**, **PCI Fines**, **Defrauded Funds**, and **Business Income Loss**.

**Loss(es)** do not include:

1. Costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory, or administrative relief, including but not limited to costs to remove electronic data from a website or social media site;
2. Any monetary amount which is not insurable under the applicable law or jurisdiction pursuant to which the **Coverage Form** is construed;
3. Discounts, prizes, awards, coupons, or other incentives offered to the **Insured's** clients, **Impacted Individuals**, or **Impacted Entities**;
4. Consideration charged by, paid to or owed to the **Insured,** including but not limited to restitution, disgorgement, reduction, royalties or licensing fees, or return of any consideration;
5. Any costs, fees or expenses incurred or paid by the **Insured** in establishing the existence of or amount of **Loss**, other than to a **Vendor** (including lawyers, experts, and litigation support staff) designated in writing or **Approved** in advance;
6. Fines, taxes, penalties, loss of tax benefits or sanctions, except for **PCI Fines**; or
7. Indirect or consequential losses.

**II.** **Malicious Code** means an unauthorized or harmful program, code, or script, including but not limited to any virus, Trojan horse, worm, time, logic bomb, spyware, ransomware, or malware.

**JJ.** **Mass Event** means the original and any variant of a **Malicious Code** or **Exploit** that is both:

1. The subject of an alert by, or is identified by a name or designation that is assigned by, any (i) United States (federal or state) government entity or agency or (ii) computer security, forensics, threat intelligence, or anti-virus entity, service provider or vendor (including but not limited to CrowdStrike, Juniper Networks, Mandiant/FireEye, Norton, Malwarebytes, McAfee, Kaspersky, Digital Shadows, RiskIQ, Recorded Future, Flashpoint, Anomali, Mimecast, Proofpoint, Palo Alto Networks, RSA, Seculert/Radware, Symantec, or Verizon); and
2. Publicized (meaning reported on in two or more news or technology media or publications, including but not limited to The New York Times, Washington Post, Los Angeles Times, Financial Times, FOX Corporation, CNN, The Wall Street Journal, NBC News, ABC News, CBS News, VICE Motherboard, Data Breach Today, Krebs on Security, Dark Reading, ZD NET, Wired, PC World, The Register, or CSO Online);

in each case, prior to an **Insured** providing notice of an **Event**, **Loss**, **Claim** or **Circumstances**, whichever is earliest, pursuant to Section IV. A.

**KK.** **Media Wrongful Event** means any or all of the following that is unintentionally or unknowingly caused by **Electronic Media Advertising** first published or disseminated during the **Coverage Form Period**:

1. Libel, slander or other defamation; or
2. Infringement of copyright, trademark, title, slogan, trade name, trade dress, service mark, service name, or misappropriation of ideas.

**LL.** **Named Insured** means the person(s) and/or entity(ies) listed on the Policy Declarations, to which this Coverage Form is attached.

**MM.** **Network Disruption Event** means an interruption, disruption, failure, suspension, or delay in the performance of the **Computer System** directly caused by **Unauthorized Access or Unauthorized Use** of, or the introduction of **Malicious Code** or **Exploit** into, the **Computer System**.

**NN.** **Network Security Event** means any one or more of the following directly caused by a **Network Disruption Event**:

1. The inability of an **Insured** or authorized third party user to access the **Computer System**;
2. An **Insured's** transmittal or distribution of **Malicious Code** or **Exploit** to, or the failure or corruption of, a third party's computer system or network; or

3. The perpetuation of a denial of service attack on a third party's computer system or network.

OO. **Payment Card Services Agreement** means an agreement between the **Named Insured** and a financial institution, credit card or debit card company or credit or debit card processor, enabling the **Named Insured** to accept credit card, debit card, prepaid card or other payment cards for payments.

PP. **PCI Claim** means the notification of the **Named Insured's** failure to comply with or violation of any Payment Card Industry Data Security Standards established by the PCI Security Standards Council, which notification is by a party who has entered into a **Payment Card Services Agreement** with the **Named Insured**.

QQ. **PCI Fines** means the fines paid which are explicitly defined as a "fine" in, and which the **Named Insured** is contractually obligated to pay pursuant to, a **Payment Card Services Agreement** due to a breach of a **Payment Card Services Agreement** caused by a **PCI Security Violation Event**. **PCI Fines** do not include (i) subsequent fines arising out of continued noncompliance or the same breach, (ii) any increased transaction costs, or (iii) any chargebacks.

RR. **PCI Security Violation Event** means the act or omission of the **Named Insured** that violated the Payment Card Industry Data Security Standards as determined in accordance with the terms of the **Payment Card Services Agreement**.

SS. **Peripheral Hardwired Devices** means non-portable devices connected by hardwire to the **Computer System**, including but not limited to printers, scanners, and routers.

TT. **Personally Identifiable Information** means any non-public information about a person that allows such person to be uniquely and reliably identified, or allows access to the person's financial account or medical records information, and for which notification of unauthorized access is required by a **Privacy Law**. The term **Personally Identifiable Information** does not include publicly available information that is lawfully made available to the general public (including, without limitation, being made available by such person on social media or other public sites), or **Corporate Information**. The **Personally Identifiable Information** must be in the direct care, custody or control of the **Named Insured** in the ordinary course and scope of its business operations.

UU. **Portable Device** means an electronic portable device such as a computer, smart phone, smart wearable or other similar device that connects to the **Computer System** either directly or through a **VPN**.

VV. **Privacy Breach Event** means the following actual or alleged events:

1. Theft, loss, unintentional or unknowing dissemination, or accidental publication of **Protected Information**;
2. **Unauthorized Access or Unauthorized Use** of **Protected Information**; or
3. The **Named Insured's** violation of a **Privacy Law**.

WW. **Privacy Breach Expenses** means the following reasonable and necessary fees, costs and expenses directly incurred for or by the **Named Insured**, and **Approved** in advance, in responding to a **Privacy Breach Event**:

1. **Notification Expenses**:
Notification fees and expenses charged by a **Vendor** (including lawyers, experts, and litigation support staff) to notify an **Impacted Individual** and any regulator required to be notified by applicable law that: (i) a **Privacy Breach Event** occurred, and (ii) there was, may have been or may be **Unauthorized Access or Unauthorized Use** of the **Personally Identifiable Information**.
2. **Monitoring Expenses**:
Fees and expenses charged by a **Vendor** (including lawyers, experts, and litigation support

staff) to provide credit monitoring, identity theft, or fraud resolution services to an **Impacted Individual** affected by a **Privacy Breach Event**.

3. **Cyber Investigation Expenses**:
   Fees and expenses charged by a **Vendor** (including lawyers, experts, and litigation support staff) to investigate any or all of the following:
   a. Whether **Protected Information** has been accessed; or
   b. Whether the **Named Insured** has an obligation to provide notice under a **Privacy Law**.

4. **Crisis Management Expenses**:
   a. Fees and expenses charged by an **Approved** public relations firm, law firm or crisis management firm to perform crisis management services to minimize the potential harm to the **Named Insured's** business from a **Privacy Breach Event**; and
   b. Fees and expenses charged by a call center designated in writing or **Approved** in advance to assist in managing incoming calls during and concerning a **Privacy Beach Event**.

**Privacy Breach Expenses** shall not include the following:

i. Salaries, wages, fees, remuneration, overhead, benefits, or expenses of the **Company** or the **Insureds**; or

ii. Fees, costs or expenses to enhance, upgrade or otherwise modify, or improve the **Computer System** beyond the level that existed immediately prior to the occurrence of a **Privacy Breach Event**.

**XX.** **Privacy Law** means any law or regulation governing the protection of **Personally Identifiable Information,** provided that the text of the law or regulation expressly requires one or more of the following:

1. Posting privacy policies;
2. Adopting specific privacy or security controls for **Personally Identifiable Information**; or
3. Notifying **Impacted Individuals** if their **Personally Identifiable Information** has potentially been accessed or disclosed without authorization.

**YY.** **Protected Information** means **Personally Identifiable Information** or **Corporate Information**.

**ZZ.** **Reconstruction Period** means the period of time that begins at the conclusion of the **Business Interruption Waiting Period** and ends at the earliest of:

1. 60 days;
2. The date that data restoration, data re-creation and system restoration directly related to the **Business Interruption Event** has been completed in order to permit the **Named Insured** to resume business operations; and
3. The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and prompt good faith effort.

**AAA.** **Reconstruction Period Net Income** means the measurable difference between (1) the actual net income (net profit or loss) before taxes, calculated on an hourly basis and based on actual historical financial numbers (specifically the twenty-four (24) months prior to the **Business Interruption Event**) that the **Named Insured** would have earned or incurred during the **Reconstruction Period** had no **Business Interruption Event** occurred, minus (2) the actual net income (net profit or loss) before taxes, earned or incurred by the **Named Insured** during the **Reconstruction Period**; provided that **Reconstruction Period Net Income** shall not be based on, shall not include, and no coverage shall be provided for (a) any net profit that could have or likely would have been earned as a result of an increase in the volume of the **Named Insured's** business during the **Reconstruction Period** (other than increases consistent with actual historical financial numbers (specifically the twenty-four (24) months prior to the **Business Interruption Event**)), or (b) any instances where the measurable difference calculated in this paragraph is less than $0.00.

**BBB.** **Regulatory Fines** means the civil or administrative fines or penalties assessed against a **Named**

**Insured** in a **Regulatory Proceeding Claim**, if such fines and penalties are insurable under the applicable law and the **Named Insured** is legally obligated to pay such fines and penalties, in all cases arising from a **Privacy Breach Event**.

**CCC.** **Regulatory Proceeding Claim** means each of the following that alleges the failure to comply with a U.S. federal or state **Privacy Law**:

1. A written demand to the **Named Insured** for documentation or information commenced by service of a complaint or similar pleading brought by a federal or state regulatory body or regulator; or
2. An investigation or civil proceeding brought against the **Named Insured** by a federal or state regulatory body or regulator.

**DDD.** **Related Claims** mean all **Claims** that are based upon, arising from, in consequence of, directly or indirectly resulting from, or involving the same, continuous, repeated, related, or substantially similar **Circumstances**, or a same, continuous, repeated, related, or substantially similar series of **Circumstances**.

**EEE.** **Related Events** means all **Events** that are based upon, arising from, in consequence of, directly or indirectly resulting from, or involving the same, continuous, repeated, related, or substantially similar **Circumstances**, or a same, continuous, repeated, related, or substantially similar series of **Circumstances**.

**FFF.** **Related Losses** mean all **Losses** that are based upon, arising from, in consequence of, directly or indirectly resulting from, or involving the same, continuous, repeated, related, or substantially similar **Circumstances**, or a same, continuous, repeated, related, or substantially similar series of **Circumstances**.

**GGG.** **System Compromise Event** means the **Unauthorized Access or Unauthorized Use** of the **Computer System**, or the introduction of **Malicious Code** or **Exploit** into the **Computer System**, that materially degrades or damages the performance of the **Computer System** or corrupts or destroys any **Electronic Media** in the **Computer System**.

**HHH.** **Third Party Claims** means a written demand or assertion of a legal right for monetary damages or services, including the service of a civil complaint or similar proceeding, or request for arbitration or mediation, brought against an **Insured**, in each case directly arising from a **Third Party Liability Event**. For the avoidance of doubt, **Third Party Claims** do not include **Regulatory Proceeding Claims**.

**III.** **Third Party Liability Event** means any or all of the following:

1. **Media Wrongful Event**;
2. **Network Security Event**; or
3. **Privacy Breach Event**.

**JJJ.** **Unauthorized Access or Unauthorized Use** means the access to or use of the **Computer System** or **Protected Information** by a person or entity not authorized to do so, or the access to or use of the **Computer System** or **Protected Information** by an authorized person or entity in an unauthorized manner.

**KKK.** **Vendor** means a third party person or entity that provides services to the **Named Insured** that the **Company** has either (i) designated in writing, or (ii) **Approved**. Where indicated, the term **Vendor** may include lawyers, experts, and litigation support staff.

**LLL.** **VPN** means a virtual private network.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 67 of 71
PageID #: 100

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.


© ISO Properties, Inc., 2007

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 68 of 71
PageID #: 101

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

| |
|---|
| **SCHEDULE – PART I** |
| **Terrorism Premium (Certified Acts)** **$** 0<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**<br>General Liability Coverage Part<br><br>**Additional information, if any, concerning the terrorism premium:** |
| **SCHEDULE – PART II**<br>**Federal share of terrorism losses** **80** **% Year: 20** **25**<br>(Refer to Paragraph **B.** in this endorsement.)<br>**Federal share of terrorism losses** **80** **% Year: 20** **26**<br>(Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.


© Insurance Services Office, Inc., 2015

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 69 of 71 PageID #: 102

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.


© Insurance Services Office, Inc., 2015

Case 4:26-cv-00050-TRM-MJD Document 1-2 Filed 09/02/26 Page 70 of 71 PageID #: 103

Progressive Advantage Business Program
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company

**Policy No:** CP00085150 **Payment Plan:** Monthly-Renewal Business

# CONFIRMATION OF ENROLLMENT IN AUTOMATIC PAYMENTS

Thank you for enrolling in our automatic payment plan for policy number: CP00085150. You have authorized Progressive Advantage Business Program to deduct payment from your checking or savings account, or to charge your credit or debit card. Your enrollment is complete and we will make payment deductions in the amounts and on the due dates indicated on your billing statement. Refer to your billing statement for a schedule of deductions and any applicable service charges. Note that changes to your policy or premium may change the amount debited. Your authorization shall apply to any renewal, reinstated, or amended policy with Progressive Advantage Business Program unless revoked by you. The charge will appear on your bank or credit card statement as “MidvaleIndemnity Company.” Note that Progressive Advantage Business Program has the right to discontinue your enrollment at any time. Refunds or credits, if any, may be made directly to your card or account. You can cancel your payment deductions by calling us at (844) 306-4926.

Thank you and we appreciate your business.